IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SEIU Local 49, an organization, and IMMIGRATION COUNSELING SERVICE, an organization,<br><br>                Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA; WILLIAM McNAMEE, USCIS Portland District Director; ALBERTO GONZALES, Attorney General of the United States, MICHAEL CHERTOFF, Secretary of Homeland Security of the United States,<br><br>                Defendants. | CV. 05-271-AS<br><br>OPINION<br>AND ORDER |

ASHMANSKAS, Magistrate Judge:

Three motions are currently before the court: plaintiffs' Motion for Leave to File an Amended Complaint; and the parties' cross-motions for summary judgment. For the reasons that follow, plaintiffs' motions (docket Nos. 25 and 35) are DENIED, and defendants' motion (Docket No. 32) is GRANTED.

1 - OPINION AND ORDER

## BACKGROUND

Plaintiffs SEIU Local 49 ("Local 49") and Immigration Counseling Service ("ICS") challenge an aspect of Infopass—an internet-based appointment program—that controls access to Immigration Information Officers ("Information Officers") at the Portland District office of the United States Customs and Immigration Service ("USCIS"). Under this appointment system, an individual seeking information from an Information Officer must obtain an appointment through an internet-based computer program known as Infopass. (The term "Infopass" will be used herein to encompass this internet-based scheduling system.)

Before January 2005, people could meet with an Information Officer without an Infopass appointment, simply by walking into the District office and waiting for an Information Officer to be available. Since January 2005, plaintiffs maintain that Infopass is the *only* way to schedule an appointment with an Information Officer and that any individual without an Infopass appointment will be denied an access to information from the Information Officers. It is this aspect of Infopass with which plaintiffs take issue—the denial of access to those without internet-made appointments.

Plaintiffs' challenge however, is more procedural than substantive: they claim that Infopass was promulgated in violation of the Freedom of Information Act (FOIA) and the Administrative Procedures Act (APA). Plaintiffs also seek to amend their complaint to add a claim that Infopass violates the Paperwork Reduction Act (PRA) and have moved for summary judgment on that claim as well. Defendants oppose plaintiffs' motion to amend and seek summary judgment in their favor.

Plaintiffs were previously denied a preliminary injunction that would have prohibited defendants from declining access to Information Officers to anyone walking into the District office without an Infopass appointment.

## PRELIMINARY MATTERS

### I. Defendants' Response to Requests for Admission

Plaintiffs seek an order deeming admitted their requests for admission on the ground that defendants' response was untimely. Rule 36(a) of the Federal Rules of Civil Procedure provides that a matter is admitted if no response is served within thirty days unless the parties or court sets a different deadline. In the present case, defendants' response was served seven days late, soon after plaintiffs' counsel reminded defendants' counsel that it was due. Plaintiffs assert that once the thirty days elapsed, the matters were admitted. Plaintiffs maintain that defendants' late response was ineffectual and the only way to withdraw the admissions would have been by motion, which would now be untimely.

Defendants respond that the court has discretion whether to deem the matters admitted and should not do so because the seven-day delay arose in the context of counsels' interaction with the agency client and was not the result of neglect or improper motive.

Plaintiffs are correct that Rule 36(a) is self-executing, and consequently, an untimely response has the same effect as a failure to deny. However, when a party seeking relief from the automatic admission provision of Rule 36(a) would otherwise be subject to an adverse summary judgment, the court may exercise its discretion to permit a late response, regardless of whether the party files a motion for relief as provided in Rule 36(b). In re Heritage Bond Litigation, 220 F.R.D. 624, 626 (C.D. Cal. 2004) (citing French v. United States, 416 F.2d 1149, 1152 (9th Cir. 1969)).

In the present case, at least some of the admissions would result in an adverse judgment for defendants. Furthermore, the delay was not due to improper motive and there is no allegation that, other than being seven days late, the answers were insufficiently responsive. Under these

circumstances, it is within the court's discretion to provide relief from the automatic admission provision, and the court declines plaintiffs' request to deem the matters admitted.

**II. Admissibility of Evidence Submitted for Summary Judgment Record**

As a further preliminary matter, plaintiffs assert that defendants rely on matters not in evidence to support their motion. In fact, both parties attempt to rely on matters not in evidence, or on inadmissible evidence. For example, the majority of documents submitted by plaintiffs were unauthenticated and merely attached to their Concise Statement of Material Facts. As the parties agree, however, the issues in this case are primarily legal and not factual, and considering the record's admissible evidence, the *material* facts are not in dispute. Consequently, the occasional reference to unauthenticated documents or evidence not in the record does not impair the court's ability to rule on the merits of the parties' motions, which may be resolved on the basis of evidence properly before the court.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. Id. at 324. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir.), cert. denied, 493 U.S. 809 (1989).

The substantive law governing a claim or defense determines whether a fact is material.

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987). The court must view the inferences drawn from the facts in the light most favorable to the non-moving party. Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The Ninth Circuit, however, has stated, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc., 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006 (1988), citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). When the non-moving party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. Id.

FACTS

Plaintiffs accept the following facts as put forth in Defendants' Concise Statement of Material Facts (Defendants' Facts): Early in this decade, officials of USCIS became concerned about long lines of aliens outside their offices waiting to receive information or have questions answered by Information Officers. Defendants' Facts, ¶ 1. A program was instituted in the Miami, Florida, USCIS office through which aliens could make appointments to meet with an Information Officer by using a computer. Miami's program reduced the lines outside the USCIS Office. Defendants' Facts, ¶ 2. From the program in Miami, USCIS developed Infopass, which is a computer-based system that allows people to make reservations by use of a computer to see an Information Officer at a designated time and place. Defendants' Facts, ¶ 3. By 2005, Infopass went into effect nationwide. Defendants' Facts, ¶ 4. The USCIS directive about the initiation and functioning of Infopass was never submitted for notice and comment under the APA. Nor was it submitted for comment under FOIA. Defendants' Facts, ¶ 5.

5 - OPINION AND ORDER

Defendants concede that Infopass is a "rule" as defined in §551(4) of the APA. Defendants' Memorandum in Support of Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Defendants' Memo"), p. 11.

## DISCUSSION

Defendants contend that they are entitled to summary judgment because: (1) plaintiffs lack standing; (2) Infopass is a "rule of agency organization, procedure or practice" and consequently exempt from notice and comment requirements; and (3) plaintiffs had actual and timely notice of the rule and consequently cannot maintain their FOIA claim.

Defendants also move for summary judgment on the ground that plaintiffs have failed to provide evidence that Infopass violates the Fifth Amendment to the United States Constitution because it discriminates amongst those seeking access to Information Officers on the basis of income, race, disability or literacy. See Complaint, ¶ 24. Plaintiffs have not sought summary judgment, or opposed defendants' motion for summary judgment, on this claim and appear to have abandoned it. Consequently, summary judgment is granted in defendants' favor on plaintiffs' Fifth Amendment claim.

**I.      Standing**

Defendants contend that plaintiffs lack standing, and this court therefore lacks jurisdiction. Plaintiffs respond that each has organizational first-party standing and that Local 39 also has associational standing.

In Lujan v. Defenders of Wildlife, the Supreme Court established a three-part test to determine whether a party has standing as required under Article III of the United States Constitution. 504 U.S. 555, 560-62 (1992). To have standing to assert a claim, the party must have

an injury in fact, caused by the defendant, and redressable by the court. Id.

The Court describes the injury in fact requirement as an invasion of a legally protected interest, which is concrete and particularized as well as actual or imminent, *i.e.*, not conjectural or hypothetical. Id. An organization may suffer an injury sufficient to confer standing if it has suffered a diversion of resources and frustration of its mission. For example, the Ninth Circuit found that it was sufficient to establish standing where the defendant agency's policy frustrated the plaintiffs' goal to help refugees and required the plaintiffs to expend resources in representing clients that they would otherwise spend in other ways. El Rescate Legal Services, Inc. v. Executive Office of Immigration Review, 959 F.2d 742, 748 (9th Cir. 1991). As described below, plaintiffs offer evidence that each has suffered an injury similar to that discussed in El Rescate Legal Services.

ICS offers the declaration of Kathryn Lavenne, an immigration counselor who works for ICS, in which she states:

> "Since January 2005, the Legal Clinic has been swamped with individuals who were denied service at the [CIS] office because they did not have an internet-made appointment. Many people, people who are not traditionally our agency clients, have come to our office seeking Internet-access and assistance in making InfoPass appointments. These people wanted to ask questions at the [CIS] Information Counter but were denied the service. These individuals have overwhelmed the Legal Clinic's eligibility-screening function. This has seriously impacted our agency's mission."

Lavenne Declaration, p. A-2.[1] Ms. Lavenne also stated that she frequently encounters times when the Infopass system is not working, when no appointments are available, or there are insufficient appointments available for a large family. Id.

---

[1] Citations to affidavits and declarations are identified by the last name of the affiant or declarant, and the page number(s) of the affidavit or declaration. Citations to the transcript of the preliminary injunction hearing are identified by "TR" followed by the page number(s) of the transcript.

7 - OPINION AND ORDER

ICS also offers the declaration of Samuel D. Reese, another immigration counselor who works for ICS. He states that Infopass has caused many Spanish-speaking immigrants to increasingly rely on "notarios," who take advantage of those seeking their counsel by providing incorrect advice and charging exorbitant fees for their services, which may include scheduling Infopass appointments and printing appointment tickets. Reese Declaration, pp. B-1 to B-3.

In regard to whether plaintiff SEIU Local 49 has suffered an injury in fact, plaintiffs assert that it and its members have been harmed by the limitations on access to Information Officers imposed by Infopass. In support of that contention, plaintiffs offer the declaration of David Ayala, a community and labor organizer for SEIU Local 49. He states that:

> "Many of our immigrant members do not own computers or have Internet-access. Some of our immigrant members have never used a computer and do not understand how to use a "mouse", keyboard, or printer. Many of our immigrant members cannot read in any language. It is no understatement to say that many of our immigrant members would not be able to successfully navigate an Internet-based program without extensive, hands-on supervision and assistance."

Ayala Declaration, pp. C-1 to C-2. He also states that the Union itself is harmed because the limit on access to Information Officers impairs members' knowledge, which puts them at a disadvantage in negotiating with employers. Id. at C-2.

Defendants argue that more is required to show injury. While it is true that defendants are able to suggest types of evidence that have not been submitted that might bolster plaintiffs' standing, it is not true that such evidence it *required* to survive defendants' motion. Each plaintiff has submitted sufficient admissible evidence of injury in fact. Plaintiffs must further show that their injuries were caused by the defendants and redressable by the court.

Plaintiffs have offered sufficient evidence that the injuries described above were caused by Infopass. While defendants are able to suggest other possible causes for plaintiffs' injury, it does

8 - OPINION AND ORDER

not follow that the evidence of causation is insufficient to withstand defendants' motion. The declarations submitted by plaintiffs are sufficient to show that the injuries described were caused by the defendants' implementation of Infopass.

Plaintiffs must also show that the court can redress their injuries. The possibility that defendants might decide to implement Infopass in the same manner even after a notice and comment period does not mean plaintiffs' injuries are not redressable. In cases where the plaintiff asserts a procedural injury the redressability requirement is relaxed. Yesler Terrace Community v. Cisneros, 37 F.3d 442, n. 4 (9th Cir. 1994). Plaintiffs assert that they would like the opportunity to comment on the rule and have input into its development and implementation. As such, a judgment that defendants violated the APA would sufficiently redress plaintiffs' injury, and plaintiffs have therefore met their burden on this element of standing.

In the present case, defendants are not entitled to summary judgment on the ground that plaintiffs lack standing.[2]

## II.    Plaintiffs' APA Claim

Before a rule is promulgated, amended or repealed, the APA requires the public be afforded notice of the proposed rulemaking and an opportunity for comment. 5 U.S.C. § 553. There are, however, exceptions to this requirement, including: (1) "interpretive rules"; (2) "general statements of policy"; (3) and "rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). Defendants cite the third category of exempted rules, arguing that notice and comment were not required because Infopass is a "rule of agency organization, procedure, or practice."

---

[2] Since each plaintiff has first party organizational standing, it is not necessary to reach Local 49's argument that it also has associational standing.

Defendants assert that a rule's substantive effect on the public is irrelevant in determining whether it qualifies as a "rule of agency organization, procedure, or practice." The determinative criterion, defendants argue, is whether the rule effects agency discretion and decision-making. If so, they assert, it is a "rule of agency organization, procedure, or practice" and not subject to notice and comment requirements.

In support of this argument, defendants rely on cases addressing other types of rules that are exempt from notice and comment requirements, specifically, the interpretive rule and policy statement exceptions, which are not at issue here. See, e.g., Mada-Luna v. Fitzpatrick, 813 F.2d 1006, 1016 (9th Cir. 1987) (public impact of general statement of policy did not render it subject to notice and comment requirements); River v. Becerra, 714 F.2d 887, 890-91 (9th Cir. 1983) (public impact of interpretive rule did not render it subject to notice and comment requirements).

Moreover, despite their argument that the substantive effect on the public is irrelevant, defendants concede that the effect on the public should be taken into consideration in evaluating whether a rule is rule of agency organization, procedure or practice. Specifically, defendants admit that a "critical feature of this exemption is that it covers agency actions that do not themselves alter the rights or interests of the parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." Defendants' Memo, p. 12, citing Batterton v. Marshall, 648 F.2d 694, 701-702 (D.C. Cir. 1980).

Thus, both plaintiffs and defendants frame the issue with reference to Infopass's effect on the rights or interests of the public. Defendants first argue that, to the extent a rule's effect on the rights and interests of the public is determinative, the public has no *right* to consult with Information Officers. The public does, however, have an *interest*, and if that interest is sufficiently impaired,

10 - OPINION AND ORDER

the rule could be subject to notice and comment requirements.

Defendants further argue that Infopass merely "alters the manner in which members of the community receive walk-in information services from USCIS" and "only organizes the way a member of the community speaks to an Information Officer in person at the Portland district office" and consequently, Infopass is a rule of agency organization, procedure or practice. Defendants' Memo, p. 13. Plaintiffs, on the other hand, argue that Infopass is a *de facto* denial of access to individuals who are not computer literate, do not have access to a computer or are otherwise prohibited from operating a computer, for example, due to disability.

To support their contention that Infopass's impact on the public is insufficient to trigger notice and comment requirements, defendants offer the testimony of District manager, Paula Brinkman, in which she describes accommodations made for those without, or unable to make, an Infopass appointment. As had been the case before Infopass, there is an Information Officer who is responsible for triage, and one of that officer's duties is to find out how far a person has traveled if he or she shows up without an Infopass appointment. If a person without an Infopass appointment comes to the District office from more than 100 miles away, that person is seen by an Information Officer and not asked to return once they have made an Infopass appointment. TR 43-44.

Ms. Brinkman also testified that, if a person has a question that can be briefly answered or only needs a form, *i.e.*, circumstances in which it would take longer to explain Infopass than it would to provide the requested information, the person is not turned away for lack of an Infopass appointment. TR 44. She further testified that the Information Officers would never turn away anyone with a disability, such as a sight problem, for lack of an Infopass appointment. TR 45-46.

In addition, she testified that there is a computer on-site for people to use to make Infopass appointments and that a second computer "kiosk" would be available for that purpose "in the near future" (following the March 25, 2005, preliminary injunction hearing). While the kiosk is a "stand-up unit," the other computer is wheelchair accessible. TR 48. Finally, she testified that help is available for those unable to operate a computer:

> "Q: What about people who do not have appointments, have something that is longer than a question or picking up a form, they come from a short distance. . . . there [are] no deadlines, but they simply cannot operate a computer. They can't go to the airport and check in with an E-ticket, because they can't handle a machine. I won't cast aspersions on attorneys and others in that category. But do you have someone there to help that person make the appointment?
>
> "A. Not on a full-time basis. But what would happen in a case like that if someone said: I just do not know how to make an appointment, I don't have anyone to do it for me, many times my Immigration Information Officers will stand there at their own computer, make the appointment, give the person the [appointment ticket], because that, again, is quicker than walking them over and going through an exercise that is not going to take you anywhere because the person is never going to become computer literate for whatever reason."

TR 50-51.

In response to defendants' evidence of accommodations, plaintiffs cite statistical evidence that certain individuals without Infopass appointments were turned away from the Portland District office. This statistical evidence was summarized in the Opinion and Order denying plaintiffs' request for a preliminary injunction:

> "[D]efendants have provided statistics, which show that from February 1, 2005, to March 23, 2005, 2,898 walk-in clients were triaged. Of those: 237 (or 8 percent) were given an appointment nonetheless because they had traveled a long distance or had an emergency; 1,726 (or 60 percent) were given forms or briefly provided information; and 935 (or 32 percent) were asked to come back once they had

scheduled an appointment using Infopass.[3] During that same time period, 3,651 clients were seen with Infopass appointments, approximately, 25 percent more than the total number of people who walked in without an appointment. Between members of the public who walked in and were accommodated and members of the public who had Infopass appointments, six times the number of clients were seen (5,614) than the number that were turned away (935). Moreover, there is no evidence in the record that any of the clients who were turned away were unable subsequently to make an Infopass appointment or suffered irreparable injury as a result thereof."

Opinion and Order, March 25, 2005, p. 7.

Contrary to plaintiffs' assertion, defendants maintain that the statistics show that there is the same or even greater access to Information Officers in the wake of Infopass and that the only change is the manner in which individuals present themselves to the Information Officers. At oral argument plaintiffs conceded that a rule shortening hours of operation would be a rule of agency organization, procedure or practice, even though it would likely result in fewer people seeing Information Officers on a given day. Defendants argue that Infopass is comparable—that, while some members of the public might be turned away for lack of an appointment, the result is a delay in service (while the person obtains an appointment) rather than a denial in service all together. Plaintiffs counter that Infopass's requirement that a person use the internet is too high a barrier—that persons turned away will not obtain internet-based appointments and will be completely without access to Information Officers.

To support that argument, plaintiffs have come forward with evidence that Infopass completely dissuaded one person, Victor Pablo Pablo, from seeking information from an Information Officer. Mr. Pablo states in his declaration:

---

[3] The individuals in the last category were given an Infopass brochure with instructions on how to make an appointment using the system.

13 - OPINION AND ORDER

> "I am an immigrant to the United States. I am originally from Guatemala. My native and first language is K'anjobal, which is an indigenous language from Guatemala. I also speak Spanish as a second language. In the past I sought assistance from [ICS].
>
> "In March 2005, I had a question about immigration law about two relatives of mine who were having problems with immigration law. I wanted to find out about how to help them or how to fix the situation. When I went to the immigration office, the security officer told me that only people with appointments are allowed in to the office. He gave me a paper. He told me that I had to use the Internet. I was confused because in the past, when I had a question like this I would go to the immigration office.
>
> "I do not have a computer; nor do I have Internet access. I never ended up making an appointment at the immigration office for these reasons."

Pablo Declaration, p. 1. There is no explanation why Mr. Pablo did not seek assistance from ICS in obtaining an appointment since he had sought assistance from ICS in the past. It is also not clear why Mr. Pablo did not use the on-site computer at the District Office to make an appointment, and there is no evidence that he was denied access for that purpose.

While the declaration shows that Infopass dissuaded Mr. Pablo from making an appointment, that alone is insufficient to create a genuine issue of material fact that Infopass in effect, completely denies access to certain classes of individuals. For plaintiffs' APA claim to withstand defendants' motion for summary judgment, plaintiffs must come forward with evidence sufficient to show that a genuine issue of material fact remains. See Fed. R. Civ. P. 56(e). The criteria of "genuineness" and "materiality" are distinct requirements. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996). The requirement that an issue be "genuine" relates to the quantum of evidence that the non-moving party must produce to defeat the motion for summary judgment. Id. The non-moving party must come forward with significant probative evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). The evidence

14 - OPINION AND ORDER

must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party. See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Mr. Pablo's declaration was submitted in support of plaintiffs' motion for a preliminary injunction. Plaintiffs have produced no further evidence that any other individual was dissuaded by, or unable to use, Infopass and as a consequence, was effectively denied access to the Information Officers. On this record, it cannot be said that a rational jury could find for plaintiffs. Rather, plaintiffs have failed to come forward with evidence sufficient to create a genuine issue of fact that Infopass has an effect on the rights and interests of the public that would be sufficient to subject it to the APA's notice and comment requirements. To the contrary, the record supports defendants' assertion that Infopass is a rule of agency organization, procedure or practice.

In sum, plaintiffs have failed to offer sufficient evidence that Infopass, in effect, completely denies access to certain classes of individuals. Consequently, defendants are entitled to summary judgment on plaintiffs' claim that Infopass should have been subject to the notice and comment requirements of the APA.

### III. Plaintiffs' FOIA Claim

Plaintiffs assert that defendants violated FOIA because notice of Infopass was not published in the Federal Register. Defendants assert that plaintiffs cannot maintain this claim because they had actual and timely notice of Infopass. See 5 U.S.C. § 552(a)(1). Defendants rely upon evidence of e-mail and media outlet notification, including evidence that ICS received e-mail notification of Infopass. TR 67-88. Specifically, defendants have produced evidence that ICS attorney David Manning and ICS Executive Director Susan Rossiter received advance notification of Infopass via

e-mail. Because ICS received actual and timely notice of Infopass, it cannot maintain a cause of action for failure to comply with FOIA's publication requirements.

While there is no evidence that Local 49 received advanced notice of Infopass via e-mail, Local 49's claim fails nonetheless. The Ninth Circuit has made clear that "an individual may not raise an FOIA claim based on an agency's failure to publish a rule or regulation, unless he makes an initial showing that he was adversely affected by the lack of publication or that he would have been able to pursue an alternate course of conduct had publication occurred." Mada-Luna v. Fitzpatrick, 813 F.2d 1006, 1018 (9th Cir. 1987) (internal quotations and citations omitted); see also Lake Mohave Boat Owners Association v. National Park Service, 78 F.3d 1360, 1368 (9th Cir. 1996). In Mada-Luna, the Ninth Circuit rejected a FOIA claim where the plaintiff failed to allege "that he could somehow have altered his conduct in a material way had he been aware of the amended [rule] sooner." Mada-Luna, 813 F.2d at 1018. Local 49 likewise fails to allege how it was adversely affected by the lack of publication or otherwise prejudiced by not having known about Infopass sooner. Having failed to make this threshold showing, Local 49's FOIA claim must also be dismissed.

**IV.     Plaintiffs' Motion to Amend to Assert a Claim Under the Paperwork Reduction Act**

Plaintiffs also seek leave to amend their complaint to assert a claim under the PRA, which provides:

> "(a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this chapter if [listing certain conditions].
>
> "(b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto."

44 U.S.C. § 3512. Citing subsection (b), the Ninth Circuit has held that the PRA "authorizes its protections to be used *as a defense*. The Act does not authorize a private right of action." <u>Sutton v. Providence St. Joseph Medical Center</u>, 192 F.3d 826, 844 (9th Cir. 1999). Because the PRA does not authorize a private right of action, plaintiffs' motion to amend their complaint to assert a claim under the PRA is denied.

## **CONCLUSION**

Based on the foregoing, plaintiffs' Motion for Leave to File an Amended Complaint (Docket No. 25) is DENIED; plaintiffs' motion for summary judgment (Docket No. 35) is DENIED; and defendants' motion for summary judgment (Docket No. 32) is GRANTED.

Dated this 28th day of December, 2005.

    /s/Donald C. Ashmanskas
Donald C. Ashmanskas
United States Magistrate Judge